## UNITED STATES v. PHILADELPHIA KNITTING MILLS CO.

(Circuit Court of Appeals, Third Circuit. June 13, 1921.)

No. 2652.

**1. Internal revenue ⬳9—Salaries of corporation officers not taxable as unreasonable, but taxable if constituting diversion of profits.**

Under Corporation Excise Tax Act Aug. 5, 1909, § 38, placing a tax on the net income of a corporation, to be ascertained by deducting from its gross income "all ordinary and necessary expenses," the government may not determine whether salary paid corporation officers is a reasonable and fair compensation, but may determine whether it is salary that is paid or whether it constitutes profits diverted to a stockholding officer under guise of salary.

**2. Internal revenue ⬳28—Evidence held to raise fact issue as to diversion of corporation profits to pay officer's salary.**

Evidence *held* sufficient to raise an issue of fact as to whether part of salary paid a corporation officer was in fact for services actually rendered, or was a diversion of the profits, and as such not deductible from the gross income in determining the amount of the corporation excise tax.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit by the United States against the Philadelphia Knitting Mills Company. Judgment in favor of defendant, 268 Fed. 270, and the United States brings error. Reversed, and new trial directed.

T. Henry Walnut and Edward S. Kremp, Sp. U. S. Attys., and Charles D. McAvoy, U. S. Atty., all of Philadelphia, Pa. (Carl A. Mapes, Solicitor of Internal Revenue, and Ellis Manning, both of Washington, D. C., of counsel), for the United States.

Saul, Ewing, Remick & Saul, of Philadelphia, Pa., for defendant in error.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

WOOLLEY, Circuit Judge. In ascertaining taxable net income under the Corporation Excise Tax Act of August 5, 1909 (36 Stat. 112), the Philadelphia Knitting Mills Company, in its returns for the years 1909 to 1912, inclusive, deducted from its gross income, as "ordinary and necessary expenses," salaries paid W. H. Bilyeu, its president, for the year 1909, $12,500, and for each succeeding year, $20,000. Regarding these salaries (in excess of $5,000 per annum) as unreasonable with reference to the services rendered, and therefore not deductible, the Bureau of Internal Revenue demanded payment of the tax thereon and upon refusal the United States brought this suit. At the trial the Government proceeded on a right, which it claimed in itself, to determine what were reasonable salaries for the services rendered and to limit the deductions thereto. Upon an indication by the trial judge that recovery could not be had on this theory but could be had only on evidence which would sustain a finding that payments made ostensibly for salaries were, in whole or in part, distributions of profits,

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the government modified its theory of the case and thereafter proceeded on the line indicated. Coming to the motion for a nonsuit, the court, in entering judgment, ruled solely on the latter question. On the motion to take off the nonsuit the Government returned to its original position. This position it urges on this writ of error.

In view of the proceedings below the question involved in the case is somewhat elusive. In our examination of these proceedings we find really two questions, one raised by the Government and seemingly abandoned; the other raised by the court and ruled on.

The question on which the Government seeks the opinion of this court is: Has the Government the right, under the cited provision of the Corporation Excise Tax Act of August 5, 1909, to inquire and determine whether a salary, paid by a corporation and deducted in its return as an "ordinary and necessary" expense, is reasonable and fair compensation for the services rendered, and thereupon to revise the return and limit the deduction to what it considers a reasonable salary; and, in the event of dispute, to have a jury pass upon and decide the same?

Such a power in the Government, if it exists, must have been conferred by the statute. The statute provided for a tax at a named rate upon the net income of a corporation to be ascertained by deducting from its gross income "all ordinary and necessary expenses." (Section 38.) The statute did not specifically make a salary an allowable deduction, though it was so construed by the Bureau of Internal Revenue when the salary is a "reasonable and fair compensation for services rendered regardless of the amount of stock such officer may hold." We are asked to approve this executive construction of the statute as though it were a part of it. In order not to beg the question, we must look to the statute alone to find the power which the Government asserts.

[1] Confining our inquiry to the statute, it appears that the basis on which a salary may be allowed as a valid deduction is that it was in fact an "ordinary and necessary expense (of the corporation) actually paid * * * in the maintenance and operation of its business." To be a necessary expense it must have been paid for services actually rendered. Jacobs & Davies, Inc., v. Anderson, 228 Fed. 505, 506, 143 C. C. A. 87. Whether services were rendered and whether also they were commensurate with the salary paid are matters of judgment and discretion reposed by general law in the board of directors of the corporation. As the board of directors is charged with the duty and clothed with the discretion of fixing the salaries of the corporation's officers, the Government has no right (until expressly granted by statute) to inquire into and determine whether the amounts thereof are proper, that is, whether they are too much or too little. But, while the amount of salary fixed by a board of directors is presumptively valid, it is not conclusively so, because the Government may inquire whether the amount paid is salary or something else. Admittedly the Government has a right to collect taxes on net income of a corporation based on profits after all ordinary and necessary expenses, including

salaries, are paid. It has a right, therefore, to attack the action of a board of directors and show by evidence, not that a given salary is too much, but that, in the circumstances, the whole or some part of it is not salary at all but is profits diverted to a stockholding officer under the guise of salary and as such is subject to taxation.

Of the same opinion was the learned trial judge, though in entering judgment of nonsuit he raised and ruled upon a second question which was, not whether the salaries paid were commensurate with the services rendered but whether there was evidence which would sustain a finding that the sums paid were not all salaries but were part profits.

An inquiry of this kind is directed to a fact; and, as in all cases turning on a fact, the attention of the trial judge is directed to the sufficiency of the evidence to establish the fact. The question of fact here was whether the money paid was all salary or part profits. The presumption arising from the action of the board of directors was that it was all salary. In order to overcome this presumption the burden was on the Government to produce evidence, not necessarily conclusive, but sufficient to raise a valid inference that some definite part of the compensation was not salary but was profits. The evidence which in this respect the trial judge found insufficient was, briefly stated, as follows:

Philadelphia Knitting Mills Company was a close corporation with an outstanding capital of $330,000, of which William H. Bilyeu, its president, owned in stock approximately $240,000; his daughter, Mrs. Richards, $30,000; and Charles Moller, its vice-president, manager and superintendent, $60,000. The business of the corporation was started and its success established by Bilyeu at a time when Moller's connection with the company and his stockholding were small. As Bilyeu advanced in years and his activities in the business decreased, Moller's duties and interests correspondingly increased until, at the time in question, Bilyeu did almost nothing and Moller did almost everything in the management of the corporation's affairs.

In July, 1909,—a month before the Corporation Excise Tax Act was approved,—the Board of Directors increased the annual salary of Moller to $10,000, and in 1913 to $20,000. At the same meeting in 1909, the Board of Directors,—the personnel of which was wholly controlled by Bilyeu's dominating stock ownership,—increased his salary from $7,500 to $20,000 a year, at which figure it has ever since remained. It was testified that Bilyeu, being greatly advanced in years, had nothing to do with the operation of the plant or with the conduct of the business. He would come to the office, open the mail, sign checks, and make deposits, and then would sit around an hour or two reading the newspaper until his chauffeur came to take him home. The only reason for the substantial increase in the salary of the president was given by Bilyeu himself. It was simply to the effect that as Moller's salary was $20,000, he thought his salary should be the same. In the corporation's tax returns both salaries were deducted from gross profits in ascertaining taxable net profits. The Government raised no question about Moller's salary.

[2] On this evidence we think a jury could find that, as the increase

of Bilyeu's salary as president was made without a corresponding increase of service or business responsibility,—in fact, in the face of a progressive decrease of service and responsibility,—the amount paid him was not all for services rendered. Just how much of the annual compensation paid Bilyeu was salary and how much was profits would not be left for the jury to conjecture, for there was evidence of the amount of salaries paid presidents of like concerns of relative output and earnings. This evidence was in no sense conclusive but it was admissible and it had probative value. There was in addition evidence of the salary which the defendant corporation itself paid Bilyeu, its president, before it was increased without any reason except that Bilyeu thought his salary (for decreasing services) should keep apace with Moller's salary for steadily increasing services.

This evidence was, to be sure, only prima facie, and might have been overturned by evidence produced by the defendant corporation showing that its president, because of his position in the trade, his connection with the banks, or otherwise, rendered services to the corporation on which the Board of Directors had exercised a bona fide discretion in voting him this substantial salary. But until some evidence of this character was produced by the defendant, we think the evidence for the Government was sufficient to sustain a finding by fair-minded men that a part, and a definite part, of the compensation paid Bilyeu as salary was profits distributed to him by reason of his stockholding.

We are constrained to reverse the judgment below and direct a new trial.