## BECKER BROS. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. June 1, 1925.)

No. 151.

**I. Internal revenue** ⊜⇒9—**Government's right to recover corporation excise taxes controlled by acts of Congress in force when taxes levied.**

Questions as to government's right to recover corporation excise taxes must be decided according to provisions of acts of Congress in force when taxes involved were levied.

**2. Internal revenue** ⊜⇒9—**Refusal to deduct excessive salary allowed corporate manager in determining net income as basis of excise tax held not error.**

In government's action under Corporation Excise Tax Act Cong. Aug. 5, 1909, § 38, and

Revenue Act of 1913, to recover delinquent corporation excise taxes, refusal to deduct from corporation's gross income, a so-called salary of 85 per cent. of profits paid to corporation's president and general manager in determining net profits as basis for computation of excise tax was not error; a deduction equivalent to reasonable value of services rendered as found by jury being allowed.

**3. Internal revenue** ⊜⇒28—**Whether sum paid by corporation, ostensibly as salary, includes part of profits in computation of excise tax, is question of fact.**

In action for delinquent excise taxes, on question whether sums paid by corporation ostensibly as salary include part of profits is question of fact, affecting which there is presumption that amount paid is salary, and action of board of directors in voting its payment valid, which presumption can be overcome only by evidence justifying contrary inference.

**4. Internal revenue** ⊜⇒28—**Evidence held to raise question for jury whether corporate directors acted in good faith in voting manager 85 per cent. of profits as salary.**

In action for delinquent excise taxes, evidence that president and general manager of corporation, owning 240 shares of 250 shares of authorized stock, at his own suggestion was voted a salary equivalent to 85 per cent. of the profits, which arrangement was continued for more than 20 years, during which he, at no time, drew all his salaries, though no dividends were declared, and evidence as to reasonable value of services of persons in his position *held* sufficient to go to jury on question whether board of directors, in voting such salary, acted in good faith, or intended thereby to distribute part of profits in addition to compensation for services.

**5. Internal revenue** ⊜⇒28—**Jury's finding as to good faith of directors in voting manager salary, and as to reasonable value of services, conclusive on appeal.**

On appeal, in government's action to recover corporation excise taxes, findings of jury as to good faith of board of directors in voting manager 85 per cent. of profits of corporation as compensation for services, and as to reasonable value of services rendered, supported by evidence, are conclusive on both parties.

**6. Internal revenue** ⊜⇒9—**Corporation held entitled to deduct amount of judgment recovered against it for patent infringement in computing net income.**

Corporation paying or depositing in trust money for payment of judgment against it for infringement of patent is entitled to deduct amount so paid in determining net profit as basis of corporation excise tax, nor can such a loss be deemed one arising out of an illegal transaction, so as to be nondeductible.

**7. Damages** ⊜⇒228 — **Jury** ⊜⇒31 (7½) — **New trial** ⊜⇒162(1)—**Court cannot, without consent of prevailing party, reduce verdict; new trial or remittitur may be granted; conditional new trial not denial of right to jury trial.**

Court cannot reduce verdict, and render judgment for less amount, unless prevailing

party consents, but may give prevailing party option of accepting or submitting to new trial, which practice is not an infringement of the constitutional right to trial by jury.

**8. Appeal and error ⬤⟋1140(2)—Appellate court, as well as trial court, may permit prevailing party to file remittitur rather than submit to new trial.**

Appellate court, as well as trial court, may permit prevailing party to file remittitur rather than submit to new trial.

In Error to the District Court of the United States for the Southern District of New York.

Action by the United States against Becker Bros., a corporation. Judgment for the United States, and defendant brings error. Affirmed, on condition remittitur be filed; otherwise, reversed, and new trial granted.

The plaintiff below is the defendant in error, and the defendant below is the plaintiff in error. The parties will be hereinafter referred to as they appeared in the court below. The defendant is a corporation organized under the laws of the state of New York, having its office and principal place of business in the city and county of New York, and within the Southern district of New York.

The action was brought under the Act of Congress of August 5, 1909, section 38 thereof (36 Stat. 112), and that of October 3, 1913 (38 Stat. 114). The plaintiff, in its first cause of action, alleged that defendant was liable to pay to it an excise tax for the year 1909, amounting to the sum of $65.64. It also alleged that the tax became due and payable on June 30, 1910, and that no part of it had been paid. It further claimed that a penalty of 5 per centum of the tax was also due and payable, with interest at the rate of 1 per centum per month from June 30, 1914.

In its second cause of action it was alleged that defendant was liable to pay to plaintiff, under the same act of Congress, a special excise tax for the year 1910, in the sum of $212.08; that the said tax became due June 30, 1911, and that no part of it had been paid; that interest was due at the rate specified in the first cause of action.

In its third cause of action it was alleged that defendant was also liable, under the aforesaid act of Congress, to pay to the United States a special excise tax for the year 1911 in the sum of $141.19; that this amount became due June 30, 1912, and no part of it had been paid; that interest at

the rate specified in the first cause of action was due and payable from June 30, 1912.

Then followed a fourth, fifth, and sixth cause of action for similar excise taxes which became due and payable in the years 1913, 1914, and 1915, together with interest thereon. The last two causes of action were brought under the act of 1913.

The complaint, after setting forth the various causes of action, concluded with the following demand: "Wherefore plaintiff demands judgment against the defendant above named in the sum of $1,137.89, together with a penalty of 5 per centum thereon and interest thereon at the rate of 1 per centum per month on $65.64 thereof from the 30th day of June, 1910, on $212.08 thereof from the 30th day of June, 1911, on $141.19 thereof from the 30th day of June, 1912, on $112.73 thereof from the 30th day of June, 1913, on $315.63 thereof from the 30th day of June, 1914, and on $290.62 thereof from the 30th day of June, 1915, together with the costs and disbursements of this action."

The answer denied the allegations in the complaint, and demanded that the complaint be dismissed. The case was tried before a jury. At the conclusion of the trial the court directed a verdict for plaintiff for $880.27. Judgment was entered for that amount, together with the costs, which were taxed in the sum of $31.39.

John McCormick, of New York City, for plaintiff in error.

William Hayward, U. S. Atty., of New York City (Thomas J. Crawford, Asst. U. S. Atty., of New York City, and Chester A. Gwinn, Sp. Atty., Bureau of Internal Revenue, of Washington, D. C., of counsel), for the United States.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). This action, as disclosed in the preliminary statement, was brought to recover additional taxes claimed to be due to the United States under the provisions of the corporation Excise Tax Act of August 5, 1909, and the Revenue Act of 1913, in amounts totaling $1,267.67. The defendant corporation took over the business of Jacob H. Becker as a manufacturer of pianos. Its capital stock was fixed at $25,000, divided into 250 shares, of the par value of $100 each. Jacob H. Becker held 240 shares, his wife held 5 shares, and John McCormick held the remaining 5 shares, and these three persons constituted the board of

directors. At the meeting for organization Jacob H. Becker was elected president and treasurer, and his wife was made vice president, and John McCormick was chosen secretary of the corporation. Later, and in 1911, Rudolph C. Becker, the son of Jacob H. Becker, was elected secretary. At the first meeting by-laws were adopted permitting the board of directors to employ one of their number as general manager, with power to fix his salary and the salary of the secretary.

The directors, at the first meeting of the board, adopted the following resolution:

"Resolution made and carried at the meeting of the board of directors of Becker Bros., held at the office of Becker Bros., 527 Tenth avenue, New York City, November, 1902. The president was authorized to act as general manager of the corporation in the management of its business; to make any and all contracts necessary in the management thereof; to discount any and all of the negotiable paper of said corporation; and given discretion to fix the price of sale and terms of sale of all pianos, and to make any and all contracts which he deems necessary, and which contracts shall stand as contracts of the corporation, unless expressly rescinded by the board of directors.

"On the motion of John McCormick, it was ordered that the salary of Jacob H. Becker, as manager of the business, be fixed at 85 per cent. of the net profits arising from the conduct of the business, as declared on December 31st of each year.

"Carried; Jacob H. Becker not voting.

"On the motion of Jacob H. Becker it was ordered that the salary of the secretary be fixed at 5 per cent. of the net profits arising from the conduct of the business as declared on December 31st of each year.

"Carried; John McCormick not voting."

The directors have held few, if any, formal meetings since the one first held; it being understood that no further meetings were necessary. The corporation was organized in 1902. It did not open a new set of books of account, but used those which had been used in the individual business carried on by Jacob H. Becker prior to the incorporation. One of the accounts in the books was headed "Jacob H. Becker Capital Account," and under this heading was entered all the residue between the gross cost and the gross receipts of the business until the year 1911, when a capital account was opened, and also a salary account. Prior to the opening of these latter accounts all sums paid to the general

manager or secretary were credited to the "Jacob H. Becker Capital Account."

Neither the general manager nor the secretary withdrew all the sums to which they were entitled under the contract, but allowed much of it to remain in the business. In the first year, or 1902, the residuum amounted to about $2,500, of which the general manager was entitled for services to about $2,000; in 1903, the fund was $4,957; in 1904, it was $9,450; in 1905, it was $18,983; in 1906, it was $22,543; in 1907, it was $28,684; in 1908, it was $16,930; in 1909, the fund was $33,258. In other words, the percentage of profits to the corporation increased from 1 per cent. in 1902 to over 18 per cent. in 1907 upon the capital and surplus to 9½ per cent. in 1909.

Mr. Becker testified as follows concerning the withdrawal of his salary:

"Q. Did you withdraw all of that salary at any time? A. No, sir.

"Q. You allowed it to remain there, and continued that right along? A. Yes.

"Q. Were any dividends ever declared by that corporation? A. No, sir.

"Q. They remained in service? A. Yes, sir.

"Q. And you have acted continuously as general manager from 1902 up to the present date? A. Yes, sir.

"Q. There has been no change in your contract? No change in the agreement between you and the corporation as to the percentage? A. No, sir."

At the conclusion of the evidence, and upon consent of both sides, two questions were submitted to the jury, who rendered special verdicts with respect thereto. The questions submitted by the court were:

(1) "Q. Whether the resolution and subsequent conduct of the corporation were the means of distributing both salaries and profits?"

(2) "Q. What was the reasonable value of such service as Becker rendered to the company from 1909 to 1914, inclusive, and by that I mean, what would the company have to pay for a man of his (Becker's) general capacity to do what he did in the running of the business?"

The jury answered the first question in the affirmative, holding that the resolution relied upon by defendant was a means of distributing both salary and profits. In answer to the second question the jury found the reasonable value of the services of Becker to the corporation to be as follows: for 1909, $12,000; for 1910, $13,000; for 1911,

$14,000; and for 1912, 1913, and 1914, $15,000 for each of said years. A general verdict was thereupon directed by the court in plaintiff's favor for $880.27, based upon the findings of the jury, and upon the stipulation relative to the bad debts, and upon the ruling by the court that the deduction of the $37,000 judgment in defendant's 1914 return had been properly disallowed.

[1] There is no substantial dispute as to the facts, but the questions are as to the application of the law to the facts. The questions must be decided according to the provisions of the acts of Congress which were in force when the taxes herein involved were levied. These acts, so far as they are material to the facts of this case, must now be referred to.

The Act of August 5, 1909, 36 Stat. 112, known as the Corporation Excise Tax Law, provided in section 38 as follows:

"Sec. 38. That every corporation, joint stock company or association, organized for profit and having a capital stock represented by shares * * * shall be subject to pay annually a special excise tax with respect to the carrying on or doing business by such corporation, joint stock company or association, * * * equivalent to one per centum upon the entire net income over and above five thousand dollars received by it from all sources during such year * * *.

"Second. Such net income shall be ascertained by deducting from the gross amount of the income of such corporation, joint stock company or association, or insurance company, received within the year from all sources, (first) all the ordinary and necessary expenses actually paid within the year out of income in the maintenance and operation of its business and properties * * *; (second) all losses actually sustained within the year and not compensated by insurance or otherwise, including a reasonable allowance for depreciation of property, if any. * * *"

And the Income Tax Act of October 3, 1913, 38 Stat. 114, 172, 173, provided as follows:

"G. (a) That the normal tax hereinbefore imposed upon individuals likewise shall be levied, assessed, and paid annually upon the entire net income arising or accruing from all sources during the preceding calendar year to every corporation, joint-stock company or association * * *.

"(b) Such net income shall be ascertained by deducting from the gross amount of the income of such corporation * * * received within the year from all sources (first) all the ordinary and necessary expenses paid within the year in the maintenance and operation of its business and properties * * *; (second) all losses actually sustained within the year and not compensated by insurance or otherwise.
* * * * "

The statutes show that the tax was to be levied upon net income, and that in ascertaining net income the law required that there should be deducted from the gross income of the corporation (1) all the ordinary and necessary expenses actually paid within the year out of income, and (2) all losses actually sustained within the year and not compensated by insurance or otherwise. If, in assessing the taxes which the United States imposed upon defendant, the above requirements were observed, the judgment rendered below must be affirmed. If they were disregarded or misapplied, the judgment cannot be sustained in its present form.

[2] The first question to be considered is whether an error was committed in not deducting from the gross income the so-called salary of "85 per cent. of the net profits" which the corporation agreed to pay annually to Jacob H. Becker as general manager of its business. The United States, in fixing the amount of the tax assessed against defendant, declined to deduct 85 per cent. of the profits as being the salary of Becker for his services, and instead deducted in each year only $10,000, claiming that such amount was a reasonable compensation for the services he rendered. There can be no doubt that the corporation was entitled to deduct from the income it received all the ordinary and necessary expenses incurred in carrying on its business, including a reasonable compensation to its officers and employees. But the salaries which are paid in order to constitute an allowable deduction must be a reasonable and fair compensation for the services rendered. The expenses which can be deducted are the "ordinary and necessary expenses." If a corporation sees fit to pay its employees extraordinary, unusual, and extravagant salaries, distributing the profits of the business in the guise of salaries to its officers, who hold the stock and control its affairs, such salaries manifestly do not constitute the "ordinary and necessary expenses" of the business, which can be deducted under the statute. The government is not bound or concluded either by any resolution which the corporation adopts, or by its method of keeping its books, upon the question

as to whether any particular payment is a salary payment or a division of surplus. In United States v. Philadelphia Knitting Mills Co., 273 F. 657, 15 A. L. R. 1313, the Circuit Court of Appeals for the Third Circuit construed the Corporation Excise Tax Act of August 5, 1909. In the course of its opinion the court said:

"Confining our inquiry to the statute, it appears that the basis on which a salary may be allowed as a valid deduction is that it was in fact an 'ordinary and necessary expense (of the corporation) actually paid * * * in the maintenance and operation of its business.' To be a necessary expense it must have been paid for services actually rendered. Jacobs & Davies, Inc., v. Anderson, 228 F. 505, 506, 143 C. C. A. 87. Whether services were rendered, and whether also they were commensurate with the salary paid, are matters of judgment and discretion, reposed by general law in the board of directors of the corporation. As the board of directors is charged with the duty and clothed with the discretion of fixing the salaries of the corporation's officers, the government has no right (until expressly granted by statute) to inquire into and determine whether the amounts thereof are proper, that is, whether they are too much or too little. But, while the amount of salary fixed by a board of directors is presumptively valid, it is not conclusively so, because the government may inquire whether the amount paid is salary or something else. Admittedly the government has a right to collect taxes on net income of a corporation based on profits after all ordinary and necessary expenses, including salaries, are paid. It has a right, therefore, to attack the action of a board of directors and show by evidence, not that a given salary is too much, but that, in the circumstances, the whole or some part of it is not salary at all but its profits diverted to a stockholding officer under the guise of salary and as such is subject to taxation."

[3] In that case the court went on to point out that the question whether the sums paid were not all salaries, but were part profits was a question of fact. Such it undoubtedly is, and, conceding that the action of the board of directors is presumptively valid, and that the amount paid is presumptively paid as all salary, nevertheless this presumption is not conclusive, but is open to rebuttal. The presumption may be overcome by evidence sufficient to justify the inference that some portion of the amount paid was profits and not salary.

[4] In the instant case the court below properly regarded the question, whether the board of directors, in fixing the salary of Becker at 85 per cent. of the profits, was acting in good faith, or intended thereby to distribute to him in addition to the compensation for his services a part of the profits, as a question of fact for the jury. We think there was evidence which justified the submission of the question to the jury. Becker owned 240 of the 250 shares of the stock. It was upon his own suggestion that his salary was fixed at 85 per cent. of the profits, and the resolution so fixing it was adopted without discussion. The action was taken in 1902, and he testified in 1923 that he had at no time drawn all of his salary, and that no dividends had ever been declared by the corporation in the more than 20 years which had elapsed since that resolution was adopted. There was also the evidence of one who had been a piano manufacturer for the last 34 years, who stated that about $6,000 a year would be a reasonable compensation for the services of a general manager of the company; and another piano manufacturer testified that a reasonable compensation for such services ranged from about $8,000 to $10,000 a year. All this evidence was properly submitted to the jury, and, if believed by them, justified the verdict at which they arrived. See Jacobs & Davies v. Anderson, 228 F. 505, 145 C. C. A. 87; English & Mersick Co. v. Eaton (D. C.) 299 F. 646; People ex rel. H. Jaeckel & Sons, Inc., v. Gilchrist, 209 A. D. 120, 204 N. Y. S. 509.

[5] The jury has found as a fact that the resolution adopted by the board of directors in 1902 was a means of distributing both salaries and profits. It has also found the reasonable value of the services Becker rendered to the corporation from 1909 to 1914, inclusive. Those findings are conclusive upon both parties to this litigation, unless this case goes back for a new trial.

[6] There remains another question which must now be considered. In ascertaining the net income upon which the tax is to be paid, the corporation is entitled to deduct any of the losses incurred in carrying on its trade or business, and not compensated for by insurance or otherwise. The right to this deduction was denied to defendant both by the United States and by the court below, for an absolute and considerable loss which defendant sustained in the year 1914, and for which it received no compensation. It appears that on September 9, 1914, a judgment was entered against Becker Bros. for

$36,541.15 for the infringement of a design patent for a piano case. (D. C.) 209 F. 233. An appeal was taken to this court. 222 F. 902. At the time the appeal was taken, and to obtain a stay of execution an agreement was made between the parties in accordance with which the amount of the judgment was deposited in escrow with a trust company awaiting the result of the appeal and to pay the judgment in case the appeal was unsuccessful. The judgment was sustained on the appeal as to the infringement, but reversed as to the amount of the damages allowed, and the judgment as finally entered, and paid, amounted to $19,248.91. It is true this payment was made in the year 1916, but a deposit sufficiently large to pay the judgment had been deposited in escrow with a trust company in 1914 to await the result of the appeal. It should have been deducted when the assessment was made in June, 1921, for the tax for the year 1914. At the time that assessment was made the government perfectly well understood that the defendant herein had in 1914 set aside that sum and parted with its control of that amount to pay the judgment rendered against it in that year. The tax could only be levied upon net income, and, in ascertaining what the net income, for that year was the defendant was entitled to have deducted the $19,248.91 due on the judgment of 1914, the money to pay which the defendant had in that year deposited in trust and over which it had at that time lost possession and control. That this was a loss actually sustained by the defendant in carrying on its business is too evident to be denied.

The evidence discloses that the defendant never has been allowed to charge this loss off, either in the year 1914, when it parted with the possession of the fund, or in any other year. This certainly was error. The defendant is entitled to have the tax for the year 1914 recomputed and in so doing the amount of $19,248.91 must be deducted from the defendant's net income for that year.

The question was not raised at the argument of this case that the loss which the defendant suffered in being compelled to pay this judgment for $19,248.91, because of the infringement of a patent, was a loss arising in an illegal transaction and therefore was not deductible. In Holmes on Federal Taxes (6th Ed.) he stated that "losses in illegal transactions have been ruled not to be deductible, but it has been ruled in the case of corporations that losses sustained in ultra vires or illegal (in a sense limited to

transactions which are merely void and unenforceable and not contrary to law) transactions are deductible." He then goes on to point out that losses have been held to be deductible in the case of (1) an amount paid pursuant to a judgment as damages for misrepresentation in a land sale; (2) an amount paid in compromise of a judgment against a taxpayer on account of dereliction and neglect of duty while acting as director of a bank; (3) an amount paid by a taxpayer in compromise of a judgment against him on account of secret profits made by him in connection with the purchase of land for a corporation formed by him and others. The rulings which have been made in all these instances have been made by the department, and not by the courts, who cannot be concluded by them. But we think it proper to say that, in our opinion, a loss incurred because of an infringement of a patent is regarded by us as a deductible loss, and not as a loss in such an illegal transaction as should prevent its deduction. A party acting throughout in entire good faith may ultimately find that he has infringed a patent, and must turn over his profits and pay damages in addition to the patentee. To say that he has acted illegally, and so cannot have the losses he has suffered thereby deducted, in order to ascertain the net income upon which his tax is to be computed, is not required by any provision of the statute or upon grounds of public policy.

[7, 8] In order to correct this error it does not necessarily follow that this case should be sent back for a new trial. The court is without power to reduce a verdict and render judgment for a less amount, unless the prevailing party consents to the reduction. But a court may give to a prevailing party the option of accepting a less sum or submitting to a new trial. As was said in Kennon v. Gilmer, 131 U. S. 22, 9 S. Ct. 696, 33 L. Ed. 110, the court "may order that a new trial be had unless the plaintiff elects to remit a certain part of the verdict, and that, if he does so remit, judgment be entered for the rest. Hopkins v. Orr, 124 U. S. 510 [8 S. Ct. 590, 31 L. Ed. 523]; Arkansas Cattle Co. v. Mann, 130 U. S. 69 [9 S. Ct. 458, 32 L. Ed. 854]. And if the pleadings and the verdict afforded the means of distinguishing part of the plaintiff's claim from the rest, this court might affirm the judgment upon the plaintiff's now remitting that part. Bank of Kentucky v. Ashley, 2 Pet. 32 [7 L. Ed. 440]." The practice of permitting a remittitur is not an impairment

of the constitutional right of trial by jury (Arkansas Valley Land & Cattle Co. v. Mann, 130 U. S. 69, 9 S. Ct. 458, 32 L. Ed. 854); and that the appellate court, as well as a trial court may permit a remittitur, see Washington & Georgetown Railroad Co. v. Harmon, 147 U. S. 571, 590, 13 S. Ct. 557, 37 L. Ed. 284.

Ordered that, if the United States, within the next 30 days, shall produce and file in the office of the clerk in this court a certified copy of a remittitur, filed in the office of the clerk, of the District Court of the United States for the Southern District of New York, which remittitur shall be of so much of the tax as was in excess of the tax that would have been imposed for the year 1914, if the sum of $19,248.91 had been deducted from the amount upon which the tax for that year was computed, the judgment, less the amount so relinquished, will be affirmed; but, if this is not done, judgment will be reversed, and a new trial granted.