H. L. TRIMYER & CO., Inc., v. NOEL, Collector of Internal Revenue.

District Court, E. D. Virginia, at Norfolk.
October 11, 1928.

Jas. R. Machen, Ernest S. Merrill, and Fred F. Ames, all of Norfolk, Va., for plaintiff.

Paul W. Kear, U. S. Atty., and Luther B. Way, Sp. Asst. U. S. Atty., both of Norfolk, Va., for defendant.

GRONER, District Judge. This action was begun to recover back payments of additional income and excess profits taxes, interest, and penalty assessed against plaintiff by the Commissioner of Internal Revenue for the fiscal year ended September 30, 1920, amounting to $6,055.84. The case is submitted on a written stipulation waiving a jury, and on an agreed statement of facts. A summary of these follows:

Plaintiff company was a Virginia corporation engaged in the local stevedoring and storage business from October, 1919, to December 31, 1923. On the last-named date it surrendered its charter. Its issued outstanding capital stock amounted to 150 shares of $100 each. H. L. Trimyer was president of the company, and owned 95 shares; his son, H. C. Trimyer, was secretary, and owned 5 shares; and J. S. Jones was treasurer, and owned 50 shares. Its assets consisted of a warehouse in the city of Norfolk, erected on leased land, and sundry warehouse trucks, gangplanks, buckets, shovels, etc. These assets, together with the warehouse business and all outstanding contracts, were purchased on the 6th of October, 1919, from H. L. Trimyer for $15,000.

On the same day a special meeting of the board of directors of the corporation was held, at which all three of the above named were present, and at which Trimyer, Sr., was chairman, and Trimyer, Jr., secretary, and at which the compensation of the officers for the ensuing year (the year in question) was fixed as follows: Trimyer, Sr., president and general manager, $1,100 per month; Jones, treasurer, $800 per month, and in addition a commission to Trimyer, Sr., of 20 per centum from the gross receipts of the business up to $200,000, and 25 per centum on the gross receipts over $200,000, subject to a provision that the gross receipts should reach a total of $100,000, and subject, also, to a provision that if, by reason of the payment of this commission, the operation of the business showed a loss, Trimyer was to refund to the corporation the amount of such loss. The agreement referred to was on the motion of Jones, and unanimously adopted. The return of the corporation for the fiscal year in question showed a loss for the year in the amount of $9,999.11, which amount Trimyer refunded. The return also showed that, after allowing for this refund, Trimyer received by way of regular salary $13,200, and by way of commissions $24,075.29, or a total of $37,275.29.

Upon a review of the return by the Commissioner, only $15,000 of this amount was allowed, and the corporation assessed on the $22,275.29 disallowed, and required to pay the tax on same, and this it is now seeking to recover. It is proper to add, before concluding this statement of facts, that Mr. Trimyer reported and paid the tax on the entire amount received by him, and when, later, the Commissioner required the corporation to pay a tax on the $22,275.29 disallowed, Trimyer filed individually a claim for a refund on this amount, which claim the Commissioner rejected, on the ground that the amount of disallowed compensation could not be treated as a dividend, the result of which is that both Trimyer individually and the corporation have been taxed and have paid on the sum of $22,275.29, disallowed as described above.

The question for decision is: Was the contract of employment made between the corporation and Trimyer reasonable, so as to justify the deduction by the corporation of the total amount paid Trimyer, under that provision of the law which permits deductions "for salaries or other compensation for personal services actually rendered"? Section 234 (A) (1) Revenue Act 1918, 40 Stat. 1077.

The regulations adopted by the department (Regulations 45, 1920 Edition) state: "The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services." And it has been held by a number of courts that this is a question of fact to be determined from the evidence. U. S. v. Knitting Mills (C. C. A. 3) 273 F. 657; Becker Bros. v. U. S. (C. C. A. 2) 7 F.(2d) 3.

In this case no oral evidence was offered by either party, and the agreed statement of facts contains only this reference to the subject, viz.: "During the said fiscal year the said H. L. Trimyer devoted his services to the business of said corporation, and frequently put in considerable overtime. H. L. Trimyer & Co., Incorporated, during the period under dispute, did a gross business of $170,503.39, of which $151,972.37 was received for stevedoring work, secured through the personal efforts of the officers and stockholders of the corporation, and the balance, $18,499.64, was received from storage charges on material and commodities stored in the corporation's warehouse."

It will thus be seen that, although presumably the corporation succeeded to the individual business of Mr. Trimyer, nothing was shown in evidence as to the volume of the prior business, or of the amount which Mr. Trimyer received, either in compensation for services or by way of profits. Equally nothing is shown as to the services which

Mr. Trimyer, as president and general manager, performed after the formation of the corporation. No evidence was presented as to compensation paid similar officers by similar corporations at or about the same time, and therefore the whole question of the reasonableness of the compensation depends upon the facts shown with relation to the business of the corporation, its capital stock, and its earned profits.

As has been already stated, there were no profits, but, allowing for the full compensation provided by the resolution, a deficit of approximately $10,000. Invested capital of the company was $15,000, and the aggregate salary of the three officers of the corporation, without allowing anything for commissions, amounted to $23,850, and, with the commissions added, to an amount in excess of $55,000, or approximately one-third of the gross business done by the company, and nearly four times the amount of the invested capital. These figures, when considered by themselves, raise a strong presumption against the reasonableness of the transaction. It is entirely true, as was said in the Becker Case: "Whether services were rendered, and whether also they were commensurate with the salary paid, are matters of judgment and discretion, reposed by general law in the board of directors of the corporation."

As between the three stockholders of this corporation, therefore, what was done may not be the subject of criticism; but, while presumptively such contracts as the board may make are valid, they are, so far as salary is concerned, not conclusive against the government, because the government has the right, by the terms of the statute, to ascertain and determine whether the amount paid as salary is salary or is something else.

In this case, the corporation was controlled by Mr. Trimyer, by virtue of stock ownership equal to 66⅔ per centum of the entire outstanding total. It was, therefore, wholly within his power to do what he pleased. It is entirely true that Jones, the other stockholder, had a substantial interest in the company and acquiesced in the arrangement made; but it is also true that the salary paid to him as treasurer of the corporation in the period of a year was nearly equal to double the amount of his capital invested in the company, and while no point is made by the government of the amount of salary paid to him, and presumably it was fairly earned, still the amount of his salary as treasurer, when compared to the capital invested in the business or to the amount of

business transacted, is sufficiently large at least to raise a presumption that his acquiescence may not have been altogether unselfish. If the question now raised by the government had been raised by a minority stockholder, or a creditor, of this same corporation, it is not conceivable that a court of equity, under such circumstances, would have hesitated to express an opinion unfavorable to the position of the plaintiff. The rule in such cases has always been that the power to manage the affairs of a corporation must be exercised, not selfishly, but for the benefit of the stockholders and creditors, and a resolution adopted by directors who control the corporation through stock ownership, solely in their own interest, has always been held, when other interests intervened, an abuse of authority which the courts should set aside.

In this case, I think it is evident, from the terms of the resolution adopted by the board when the salaries and commissions were fixed, that the beneficiaries thereunder anticipated, at least the possibility, if not the probability, that the proposed payments would land the corporation on the rocks, for it was there provided that, if the commissions plus the compensation exceeded the whole net earnings of the company, the deficit should be made good by the officer principally benefited, and this proved to be the case. If the commissions provided by the resolution had related to the net earnings, much that has been said would be inappropriate; but in this case, in a business requiring the employment of much labor, and therefore the expenditure of money to make money, to charge the company, in addition to liberal salaries, with an amount equal to one-fifth of the gross receipts, was not only to invoke disaster, but to carry with it inevitably the conclusion that what was really intended was either a distribution of earnings, rather than the fixing of reasonable compensation, or payment under the guise of salary for outstanding existing contracts transferred by Trimyer to the corporation under the contract of sale.

In this situation, therefore, and without some evidence to rebut this conclusion, I am constrained to agree with the Commissioner that the plan was unreasonable within the purview of the Tax Law, and that the allowance made by the commissioner was fair and reasonable under the circumstances.

■ Whether the government should receive and hold this tax, and also the tax paid by Trimyer individually on the same money, though raised here, cannot be decided. That on its face the proposition does not seem to

be fair and reasonable is obvious, but that question is one which must be raised and determined in a suit by Trimyer individually.

I am therefore constrained to find as a question of fact that the allowance of the sum of $15,000 as compensation for Trimyer, as fixed by the Commissioner, was reasonable, and that the plaintiff is not entitled to recover in this action.