**GUARANTEE BOND & MORTGAGE CO. v. COMMISSIONER OF INTERNAL REVENUE**

No. 5574.

Circuit Court of Appeals, Sixth Circuit.

Nov. 10, 1930.

T. Gerald McShane, of Grand Rapids, Mich., for petitioner.

F. Edw. Mitchell, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., and Sewall Key, C. M. Charest, and Prew Savoy, all of Washington, D. C., on the brief), for respondent.

Before DENISON, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

Petition by Guarantee Bond & Mortgage Company, doing an abstract business and dealing in securities, to review a decision of the Board of Tax Appeals affirming the action of the Commissioner of Internal Revenue in assessing, on redetermination, a deficiency in income taxes against it in the sum of $5,312.50 for the year 1923. Petitioner was organized November 17, 1919. Its original incorporators and first and only board of directors were Henry Van Aalderen, Glendon A. Richards, John S. McDonald, Frederick W. Hinyan, Charles E. Norton, Edwin F. Cool, M. Thomas Ward, Frank J. Cook, and Christian Gallmeyer. Its authorized capital was $2,500,000, divided into 250,000

shares of the par value of $10 each. There were 150,000 shares of preferred and 100,000 shares of common stock. Upon organization it had a paid-up capital of only $1,000. At its first meeting of stockholders, November 21, 1919, the directors were authorized to issue common stock to the aggregate of 25,000 shares "for services performed, labor done, or any of such considerations as they shall from time to time deem advisable." On the same date at the first directors' meeting the president and secretary were authorized and directed by resolution to issue fully paid capital stock of the company as follows: To the order of Norton, 9,000 shares; to the order of Ward, 9,000 shares; to the order of Aalderen, 1,000 shares; to the order of McDonald, 1,000 shares; to the order of Hinyan, 1,000 shares; to the order of Gallmeyer, 1,000 shares; to the order of Richards, 1,000 shares; to the order of Cook, 1,000 shares; to the order of Cool, 1,000 shares.

The resolution continued: " * * * *  *Which stock is to be issued for services rendered by the parties in organizing, incorporating and getting the company upon a sound, financial basis, and the Board of Directors do hereby determine that the said services so rendered are worth to this company the sum of $250,-000.00.*" The stock was issued but not then delivered. On November 25, 1919, petitioner applied to the Michigan Securities Commission for permission to sell stock, and in the application stated that "*25,000 shares of the common stock are to be given to the promoters of the company for the promotion for the services rendered and in lieu of all other compensation.*" The Securities Commission, by authority of Michigan Compiled Laws 1915, p. 4237, § 11952, on December 4, 1919, ordered that the 25,000 shares issued to Van Aalderen et al. "*for promotion*" be escrowed until the company was earning 6 per cent. net upon its outstanding stock, and reserved the right for the protection of the stockholders of the company to at any time order all or any portion of the escrowed stock returned to its treasury. On February 28, 1921, petitioner applied by letter to the Securities Commission for the release from escrow of 8,000 shares of the stock issued to Ward and Norton. The letter stated: "Mr. Ward and Mr. Norton have voluntarily released the 8000 shares to the company without any obligation on the part of the company. *This will simply make our promotion stock that much less.*" (All italics ours.) On February 1, 1923, the conditions of the escrow having been met, the commission released the remaining 17,000 shares then worth $42,500,

and they were delivered to the officers and directors in the proportions above indicated. In its tax return for 1923, petitioner deducted said amount of $42,500 from its net income as compensation paid to its officers. The Commissioner disallowed this deduction and treated this sum as a capital expenditure; that is, as covering the organization expense of the corporation.

█ The Board of Tax Appeals upheld the Commissioner, and we do not think that petitioner has successfully carried the burden of showing that this decision was erroneous. Wickwire v. Reinecke, 275 U. S. 101, 105, 48 S. Ct. 43, 72 L. Ed. 184; Austin Co. v. Com'r, 35 F.(2d) 910, 912 (C. C. A. 6). The meaning of the resolution of the board of directors of November 21, 1919, is plain. The 25,000 shares of stock were issued for services already rendered. This purpose, if it needed confirmation, is reflected in the application of petitioner to the Securities Commission on November 25, 1919, and in its letter of February 28, 1922, the relevant parts of which have been quoted. We think that the issuance of this stock in accordance with the resolution when approved by the Securities Commission February 1, 1923, and accepted by the directors was a discharge of all liability to the directors for services rendered up to the date of the resolution, and that these services necessarily represent capital expenditures. They were rendered in establishing petitioner as a legal entity. They were not rendered in carrying on the business of petitioner, for on that date it had just completed its organization and had transacted no business for which it was organized. [Revenue Act of 1921, c. 136, 42 Stat. 227, § 234(a), cl. (1); Treas. Dept. Reg. 62, arts. 293, 582.] Petitioner introduced the evidence of three of its directors which tended to show that the stock was issued, not only as compensation for organizing and incorporating petitioner, but for services rendered from its organization up until February 1, 1923, when it was actually delivered, that, notwithstanding the resolution that petitioner was not "upon a sound, financial basis" at the time of its organization, it afterwards became so through the efforts of the directors, and that it was the real intention of the resolution to compensate them for such subsequent service. Neither the Board nor this court is permitted to attribute to the resolution a meaning it did not naturally carry. It was unambiguous. It carried no suggestion that the directors were being compensated for any future services in placing the company on a sound, financial basis. Up-

on the date of the adoption of the resolution, petitioner may not have been financially sound as a matter of legal intent, but it had been launched by men of skill, ability, experience, high character, and financial worth. Aside from whether it may have been legally obligated to compensate for this element of "good will," petitioner through its directors no doubt recognized the actual value of it, and felt justified in paying for it.

■ But, assuming petitioner's theory, that the stock was intended to compensate for the "ordinary and necessary expenses" incurred by the directors in carrying on the business from its inception to the year 1923, petitioner is met with the further obstacle that it failed to carry the burden of establishing before the Board that the allowances were reasonable. Botany Mills v. U. S., 278 U. S. 282, 293, 49 S. Ct. 129, 73 L. Ed. 379. A review of the evidence or of the findings of the Board would be superfluous. We think it is enough to say that the evidence supports the findings, and we have no reason to conclude that the decision was based upon any other consideration than a fair and reasonable deduction from the facts as found or that we would hold otherwise if we should approach the matter from the standpoint of a proceeding in equity as suggested but not ruled upon as a matter of practice in Collin v. Com'r, 32 F.(2d) 753, 754 (C. C. A. 6).

The decision of the Board of Tax Appeals is affirmed.