## PATTON et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10534.

Circuit Court of Appeals, Sixth Circuit.

April 19, 1948.

L. F. Loux, of Cleveland, Ohio (L. F. Loux, of Cleveland, Ohio, on the brief), for petitioners.

S. Dee Hanson, of Washington, D. C. (Theron L. Caudle, Sewall Key, A. F. Prescott and S. Dee Hanson, all of Washington, D. C., on the brief), for respondent.

Before HICKS, McALLISTER and MILLER, Circuit Judges.

HICKS, Circuit Judge.

Respondent found a deficiency in the income and victory taxes for 1943 of petitioner, James F. Patton, in the sum of $16,561.12, and of petitioner, Vincent Patton, in the sum of $16,361.80. The cases were consolidated for hearing before the Tax Court and here. The Tax Court confirmed the deficiency assessments and we are asked to review its decision.

The cases arose under Sec. 23, Internal Revenue Code, 26 U.S.C.A.Int.Rev.Code, § 23, which in so far as is applicable, is printed in the margin.[1]

During the calendar year 1943 petitioners were partners doing a general jobbing business under the firm name of "Patton Company, Cleveland, Ohio," and one William Kirk was an employee of the firm. The partnership claimed deductions for 1943 for compensation of $46,049.41 paid to Kirk. The Commissioner determined that $13,000.00 constituted reasonable compensation for him for that year and disallowed the deductions claimed above that amount. The Tax Court sustained the Commissioner.

Kirk kept the books and records of the partnership and rendered such other clerical and routine services as the office work required. He generally worked without assistants. Petitioners complain that the Tax Court erred in finding that Kirk kept the books on a cash basis, that his duties as a bookkeeper entailed little effort; that petitioners' production was practically supervised by Government inspectors; that Kirk was paid 10% of the net sales of the partnership, that the payments to him formed a basis for tax reduction; that he was to receive 10% of net sales so long as 10% commission, plus the $2,400.00 minimum, did not exceed 22½% of net profits.

They also complain that the Tax Court erred in failing to make findings that the petitioners and Kirk were unrelated and had no common business interests other than that created by the contract; that Kirk devoted long hours to the business; that the contract was of the "profit-sharing" type and formed a measuring rod by which Kirk's earnings were to be determined; that the court failed to make findings of the educational background of petitioners and give effect thereto. They complain further, that it erred in inquiring into the manner in which Kirk handled his own funds; and in permitting its decision to be controlled by passion and prejudice.

We have examined the findings in connection with the evidence and conclude that in some particulars such criticisms are unjustified. This is especially true with reference to the complaint that the Tax Court was controlled by passion and

---

[1] "Sec. 23. Deductions from gross income.

"In computing net income there shall be allowed as deductions:

"(a) [As amended by Section 121 of the Revenue Act of 1942, c. 619, 56 Stat. 798.] Expenses,—

"(1) Trade or business expenses.—

"(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, *including a reasonable allowance for salaries or other compensation for personal services actually rendered;* * * *." (Italics ours.)

prejudice. In so far as they are justified they appear to involve matters of minor importance.

■ Petitioners, however, made no application to the Tax Court, either by rehearing or otherwise, to correct its findings, and we do not think it necessary to remand the case to prevent a miscarriage of justice. Hormel v. Helvering, 312 U.S. 552, 556, 61 S.Ct. 719, 85 L.Ed. 1037; Helvering v. Tex-Penn Co., 300 U.S. 481, 498, 57 S.Ct. 569, 81 L.Ed. 755; Athens Roller Mills v. Comm'r, 6 Cir., 136 F.2d 125, 127; Lumaghi Coal Co. v. Helvering, 8 Cir., 124 F.2d 645, 648.

■■ At this late date it is an elementary proposition, needing no citation of authorities to support it, that this court is without power to make findings of fact. Its function [Title 26 U.S.C.A.Int.Rev. Code, § 1141(c)] is to determine whether the decision of the Tax Court is "in accordance with law." If it is, an affirmance is in order; otherwise the court may modify or reverse the decision. And in determining this question, the court is limited to ascertaining whether there was evidence to support the findings and decision of the Tax Court. We may not make an independent determination of the issues before the Tax Court nor pass upon the weight of the evidence or consider conflicting evidence nor choose between possible inferences that may arise.

The Tax Court found the following facts: Prior to July 1, 1940, petitioner, James F. Patton, operated the machine shop as an individual, during which time his business was small. At times he had no employees and did all the work himself. At other times the work required additional help. At times his son, Vincent, assisted him, although Vincent had full time employment elsewhere. About 1937 James F. Patton employed Kirk to do his office work. Kirk had a grammar school education and a two years' commercial course in high school. From 1893 to 1919 he engaged in clerical work and following that, he operated a small trucking business until 1929. From then, until his employment by James F. Patton he had no regular employment. From 1919 to 1941 his earnings were not sufficient to require the filing of tax returns. From 1937 to 1940 Kirk's compensation was approximately as follows: For 1937, $939.00; for 1938, $1,230.00; for 1939, $1,385.00; for 1940, $1,855.00.

On July 1, 1940, James F. Patton and his son Vincent formed a partnership and shortly thereafter James F. turned over the affairs of the partnership to Vincent. Up to December 17, 1940, the partnership, called The Patton Company, did job work for general customers, but on that date The General Motors Corporation began sending work to the Company in such volume that its productive capacity was absorbed by the new customer.

On January 2, 1941, petitioners contracted in writing with Kirk whereby he was to receive a minimum salary of $2,400.00 a year until such time as 22½% of the net profits exceeded $2,400.00. In such event the contract provided that Kirk was to receive 10% of the net sales for as long as that percentage, plus the $2,400.00 basic salary, did not exceed 22½% of the net profits.

The gross sales from 1941 to 1943 were, for 1941, $179,050.00; for 1942, $365,609.53; for 1943 [the year involved here] $460,494.06. Kirk kept the books on a cash basis in a simple way. He recorded in a cash book all receipts and disbursements and at the end of each month prepared two summary sheets, one showing total receipts and disbursements of each class and the other showing materials purchased. At the end of each year the summary sheets showing totals for each month and year were used by an accountant who translated them to an accrual basis in preparing income tax returns. Kirk kept a ledger and did the billing, which required little effort because substantially all of the Company's work was for General Motors. He prepared the payrolls, kept social security records and made quarterly social security reports. He kept petitioner Vincent Patton informed of the bank balances and transmitted to shop foremen information from General Motors as to the orders it desired to be finished first. He spoke to insurance salesmen before purchases of insurance were approved by Vincent. About five times in 1942-3 he called upon the ap-

propriate agents for approval for wage increases for employees. Kirk was not a partner in the Patton Company nor related to either of the partners.

The case strips to one question: whether, as determined by the Commissioner, $13,000.00 was reasonable compensation to Kirk for 1943. We are dealing with a pure question of fact. Wilmington Co. v. Helvering, 316 U.S. 164, 62 S.Ct. 984, 986, 86 L.Ed. 1352. In the Wilmington case, supra, the court said: "It is the function of the Board, not the Circuit Court of Appeals, to weigh the evidence, to draw inferences from the facts, and to choose between conflicting inferences. The court may not substitute its view of the facts for that of the Board. Where the findings of the Board are supported by substantial evidence they are conclusive."

In the proceedings before the Tax Court the presumption is that the Commissioner was right and petitioners have the burden of proving that his determination was wrong. We think that the findings of the Tax Court are supported by substantial evidence and an affirmance must result. There is no hard and fast rule by which reasonableness of compensation may be determined by the Tax Court. Every case must stand or fall upon its own peculiar facts and circumstances. Among other factors to be considered by that Court are: The nature of the services to be performed, the responsibilities they entail, the time required of the employee in the discharge of his duties, his capabilities and training, and the amount of compensation paid in proportion to net profits. An exclusive function of the Tax Court is the determination of the weight and credibility to be given to the witnesses.

We think that petitioners have failed to carry the burden, which the law imposes upon them, to make out their case by clear and convincing evidence. Atlas Plaster & Fuel Co. v. Comm'r, 6 Cir., 55 F.2d 802, 803; Tracy v. Comm'r, 6 Cir., 53 F.2d 575, 579; and Guarantee Bond & Mortgage Co. v. Comm'r, 6 Cir., 44 F.2d 297, 298. Probably one of the most important factors in determining the reasonableness of compensation is the amount paid to similar employees by similar concerns engaged in similar industries. The petitioners introduced no evidence upon this subject. Moreover, it occurs to us that the books of the partnership kept by Kirk would have disclosed to a great extent the nature and volume of his work and his capabilities to perform it, but neither the books nor any verified entries therefrom were introduced by petitioners. There is of course a presumption that as between the parties to the contract the compensation agreed to be paid was reasonable. But, as between petitioners and the Commissioner, such a presumption is not controlling in a controversy of this nature before the Tax Court. Botany Worsted Mills v. United States, 278 U.S. 282, 292, 49 S.Ct. 129, 73 L.Ed. 379.

Affirmed.

McALLISTER, Circuit Judge (dissenting).

According to Section 23 of the Internal Revenue Code, to which reference has been made, petitioners are entitled to a deduction in their taxes for all "the ordinary and necessary expenses paid or incurred during the taxable year in carrying on" their business, "including a reasonable allowance for salaries or other compensation for personal services actually rendered." The issue is whether the compensation which was paid to Kirk, in accordance with his contract of employment, was a reasonable allowance. As is said in the prevailing opinion, there is a presumption that, as between the parties to the contract, the compensation agreed to be paid was reasonable. But it is declared that as between petitioners herein and the Commissioner, such a presumption is not controlling in a controversy of this nature before the Tax Court, and Botany Worsted Mills v. United States, 278 U.S. 282, 292, 49 S.Ct. 129, 133, 73 L.Ed. 379, is cited as authority to sustain this conclusion.

It does not seem to me that the Botany Mills case controls the controversy before us. There, the stockholders of a corporation adopted a bylaw providing for the payment of more than 50% of the annual net profits to the members of the board of directors, for their services, in addition to their regular annual salaries of $9,000

each. In 1917, the tax year there in controversy, the amount paid out of net profits to the board of directors was $1,565,739.39, or a payment to each director of $156,573.93, in addition to his salary. Under a statute, similar in phrasing to the one before us, providing for deductions of all "the ordinary and necessary expenses paid within the year in the maintenance and operation of its business," 39 Stat. 756, the court held that this amount so greatly exceeded the amounts which are usually paid to directors for their attendance at meetings of the board and the discharge of their customary duties, as to raise a strong inference that the "amount paid to the directors was *not in fact compensation for their services, but merely a distribution of a fixed percentage of the net profits* that had no relation to the services rendered." (Emphasis supplied.) The Botany Mills case cites three other cases, hereinafter briefly discussed, that seem to me to elucidate the reason for the court's decision.

In Jacobs & Davies v. Anderson, 2 Cir., 228 F. 505, 506, it appeared that two men, who had been partners, incorporated their business a few months before the enactment of the Corporation Tax Act of 1909, and forthwith entered into a contract with the corporation to devote their services to the business, for stated salaries, and with the further provision that the net surplus profits should be divided between them on the basis of their stock holdings. The court held that the payments of net profits to the parties on the basis of their ownership of stock were not payments of compensation, but were merely the profits of the business, subject to tax. The court said that the amount paid out in dividends could not be deducted for the purpose of ascertaining the net income of the corporation. "The distribution of surplus profits was not an ordinary and necessary expense paid in the maintenance and operation of the business."

In United States v. Philadelphia Knitting Mills Co., 3 Cir., 273 F. 657, 658, the court said: "As the board of directors is charged with the duty and clothed with the discretion of fixing the salaries of the corporation's officers, the Government has no right (until expressly granted by statute) to inquire into and determine whether the amounts thereof are proper, that is, whether they are too much or too little. But, while the amount of salary fixed by a board of directors is presumptively valid, it is not conclusively so, because the Government may inquire whether the amount paid is salary or something else. Admittedly the Government has a right to collect taxes on net income of a corporation based on profits after all ordinary and necessary expenses, including salaries, are paid. It has a right, therefore, to attack the action of a board of directors and show by evidence, not that a given salary is too much, but that, in the circumstances, the whole or some part of it is not salary at all but is profits diverted to a stockholding officer under the guise of salary and as such is subject to taxation."

In Becker Bros. v. United States, 2 Cir., 7 F.2d 3, 6, where the general manager of a corporation owned 240 out of 250 shares of its stock, and entered into a contract with the corporation providing that his salary should be 85% of the net annual profits, the court said: "There can be no doubt that the corporation was entitled to deduct from the income it received all the ordinary and necessary expenses incurred in carrying on its business, including a reasonable compensation to its officers and employees. But the salaries which are paid in order to constitute an allowable deduction must be a reasonable and fair compensation for the services rendered. The expenses which can be deducted are the 'ordinary and necessary expenses.' If a corporation sees fit to pay its employees extraordinary, unusual, and extravagant salaries, distributing the profits of the business *in the guise of salaries to its officers, who hold the stock and control its affairs,* such salaries manifestly do not constitute the 'ordinary and necessary expenses' of the business, which can be deducted under the statute. The government is not bound or concluded either by any resolution which the corporation adopts, or by its method of keeping its books, upon the question as to whether any particular payment is a salary payment or a division of surplus." (Emphasis supplied.)

In all of these cases, the amounts were paid to officers who were really the beneficial owners of the corporation and who controlled its action in contracting for and paying them the unusually high salaries based upon net profits. The reasons the courts have held such salaries were not deductible as "ordinary and necessary expenses," were because they were not, in fact, compensation, but merely a distribution of profits; that such profits, divided on the basis of stock holdings, were not payments of compensation; that the claimed salaries were not salaries at all, but profits diverted to stock holding officers under the guise of salaries; and that a distribution of profits "under the guise of salaries" to officers who held the stock of a company and controlled its affairs, is not an ordinary and necessary expense, within the meaning of the statute.

In this case, Kirk was not an owner or part owner of the company, directly or indirectly. His contract of employment, providing for a salary, based on profits, was not a distribution of profits under the guise of a salary. There is no question that the contract of employment was bona fide. As was said in United States v. Philadelphia Knitting Mills Co., supra, the Government has no right to inquire into and determine whether the amount of the salary was proper, or whether it was too much or too little, but only "whether the amount paid is salary or something else."

Although much importance is seemingly attached by the Government to the fact that, before the contract of employment was entered into between Kirk and petitioners, his salary for the preceding four years was only $939, $1,230, $1,385, and $1,855, the Commissioner finally allowed a deduction on the basis of a salary to Kirk in the amount of $13,000. It can easily be perceived from the evidence that this was a purely arbitrary allowance on the part of the Commissioner. If it was based on the previous earnings of Kirk or upon what he actually did, it was obviously excessive. If it was arrived at by taking the contract for his services into consideration, it was clearly inadequate. It is impossible to escape the conclusion that the Commissioner based his allowance on the ground that the amount of compensation provided by the contract eventually turned out to be too high, merely because the profits during the years in question were so great. No such arbitrary determinations are valid, either in administrative decisions or in court adjudications. The decision that the amount provided by the contract of employment was too high was, as has been stated by the courts, no business or concern of the Government. The decisive question is whether the amount paid to Kirk was salary or a distribution of profits paid under the guise of salary. It was not a distribution of profits, for Kirk has no interest in the company.

It is admitted in this case that the amount paid to Kirk was salary, and there is nothing in the case to overcome the presumption that such compensation was reasonable. In my opinion, the partners were entitled to deduct the payment of such salary as an ordinary and necessary expense incurred during the taxable year, and the decision of the Tax Court to the contrary should be reversed.