OX FIBRE BRUSH CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8153.  Promulgated October 1, 1927.

> Additional compensation in the amount of $48,000 voted and accrued by the petitioner in May, 1920, to its president and treasurer was in excess of reasonable compensation for personal services actually rendered in that year.

*Harry B. Sutter, Esq.,* for the petitioner.
*M. N. Fisher, Esq.,* for the respondent.

This proceeding is for the redetermination of a deficiency in income and profits taxes for the calendar year 1920 in the amount of $24,091.60. The entire amount of the deficiency is not in dispute but only so much thereof as arises from the disallowance by the Commissioner of the additional salaries paid by the petitioner to its president and treasurer in that year and deducted from gross income as ordinary and necessary business expenses.

### FINDINGS OF FACT.

The petitioner is a corporation organized under the laws of the State of West Virginia. It was, during the year 1920 and for many years prior thereto, engaged in the manufacture of brushes. Its factory is located at Frederick, Md. Its executive offices and principal sales headquarters are located in New York City. The petitioner also has branch sales offices at St. Louis, Cincinnati, Philadelphia, and Boston.

J. K. Robinson, Jr., was petitioner's president during the year 1920 and had been its president since 1905 or 1906. Alfred McEwen joined the petitioner in 1907, became its treasurer at that time and continued in that office through the year 1920. Both the president and treasurer of the petitioner from 1907 until and including 1920, devoted their entire time to the promotion of its interests. During the year 1920 and in years prior and subsequent thereto they lived in or near New York City and performed their duties primarily at the executive offices located there.

In the year 1907, when Robinson and McEwen assumed control of the petitioner, the factory was in a chaotic state and was operating at a loss. In a large measure due to their efforts, the petitioner progressed to a foremost position in the brush trade and was frequently importuned by competitors to buy them out or combine with them.

Prior to the year 1917 a technical expert managed the petitioner's factory, for which he received $10,000 per annum. In the year 1917, Robinson and McEwen took over the general management of the factory. The services of the technical expert were dispensed with and in his place a factory superintendent was employed at a much lower salary to supervise routine work. In addition to their regular executive duties the president and treasurer handled all large purchases, directed all sales, directed the hiring of personnel and directed the policies of the petitioner and lines of factory development. These services were rendered from 1917 until and including 1920.

During the early part of the year 1920 the petitioner was negotiating with two large brush-manufacturing concerns relative to purchasing those concerns. These negotiations were dropped in April, 1920, but while pending they necessitated on the part of Robinson and McEwen considerable traveling, visiting of plants and work pertaining to the possible reorganization thereof. The plants, the purchase of which was under consideration, subsequently failed.

In addition to the annual salaries of $12,000 and $15,000 paid respectively to the president and treasurer, the board of directors at a meeting held on May 6, 1920, pursuant to notice to all directors, unanimously voted to pay each of these officers additional compensation of $24,000. The minutes of the meeting, so far as pertinent here, are as follows:

This meeting having been specially called for the purpose of considering and acting upon the proposal for a grant of additional compensation to Mr. J. K. Robinson, Jr., and to Mr. Alfred McEwen, for their past services to the company. * * *

RESOLVED, That this Board hereby authorize and direct the payment of the sum of Twenty Four Thousand ($24,000) Dollars to Mr. J. K. Robinson, Jr., as extra compensation for his past services to this company as an officer thereof,

and in any other capacity, the same to be paid when in the discretion of the officers, funds of this corporation for this purpose are available.

\*      \*      \*      \*      \*      \*      \*

RESOLVED, That this Board authorize and direct the payment of the sum of Twenty Four Thousand ($24,000) Dollars, to Mr. Alfred McEwen as extra compensation for his past services to this company as an officer thereof and in any other capacity, the same to be paid when in the discretion of the officers, funds of this corporation for this purpose are available.

The petitioner's books were kept on the accrual basis and in May, 1920, proper entry was made therein by crediting the accounts of the president and treasurer with the additional compensation voted and charging the expense accounts therewith.

The total compensation of $36,000 and $39,000 for the president and the treasurer, respectively, accrued and paid in the year 1920, was voted by the board of directors, having regard for the past services rendered by these officers, for the fact that they had to live in New York City, and as a reward for good efforts given to the business as demonstrated by the results accomplished.

The directors of the petitioner were J. K. Robinson, Jr., Alfred McEwen, John G. Crawford, a former vice president who was originally employed and brought into the business by McEwen, and Emory L. Coblentz, a banker of Frederick, Md., with whom the petitioner transacted a large part of its banking business. J. K. Robinson, Jr., and Alfred McEwen and their families owned approximately 36 per cent of the stock of the petitioner. Of the remaining outstanding stock of the petitioner a portion was owned by employees and a portion by Robinson's mother and sister.

Officers' salaries, gross sales, amounts carried to surplus after deducting officers' salaries and other expenses, dividends declared and paid, and the amount of capital stock outstanding for the years 1908 to 1914, inclusive, and 1918 to 1922, inclusive, were as follows:

| | Officers' salaries | Gross sales | Net earnings, amount carried to surplus | Dividends declared and paid | Outstanding capital stock |
|---|---|---|---|---|---|
| 1908 | $6,000.00 | Not shown. | $3,972.44 | None. | $300,000 |
| 1909 | 6,000.00 | $374,236.66 | 41,985.36 | None. | 275,000 |
| 1910 | 9,999.00 | 467,943.50 | 68,069.99 | $8,686.50 | 286,600 |
| 1911 | 9,999.00 | 521,650.78 | 21,611.75 | 4,500.00 | 298,600 |
| 1912 | 9,999.00 | 596,910.57 | 52,013.74 | 4,500.00 | 300,000 |
| 1913 | 10,999.00 | 612,087.57 | 49,810.44 | 13,337.50 | 297.500 |
| 1914 | 16,000.00 | 596,856.83 | 28,591.95 | 4,462.50 | 297,500 |
| 1918 [1] | 25,384.64 | 1,068.641.46 | 132,678.16 | 56,576.00 | 465,400 |
| 1919 | 27,000.00 | 1,193,742.39 | 211,130.52 | 133,579.50 | 474.700 |
| 1920 | 75,000.00 | 1,273,474.72 | 158,753.67 | [2] 123,275.00 [3] 300,000.00 | |
| 1921 | 27,000.00 | 980,376.56 | 128,745.07 | 94,388.00 | 899,000 |
| 1922 | 33,000.00 | 1,342,834.03 | 255,762.16 | 170,860.00 | 900,000 |

[1] No data furnished for 1915 to 1917.
[2] Cash.
[3] Stock.

The regular, additional, and total salaries paid or accrued to the petitioner's president and treasurer in the year 1920 were not in proportion to the number of shares of stock held by them.

In computing the petitioner's taxable income for the year 1920 the Commissioner disallowed as a deduction the additional compensation of $48,000 voted and accrued in 1920 to the president and treasurer under the circumstances above set forth.

OPINION.

Love: The sole issue in this proceeding is whether the additional compensation in the amount of $48,000 voted and accrued in the year 1920, pursuant to the action taken by the board of directors on May 6, 1920, to the petitioner's president and treasurer may be deducted from gross income for that year.

It is necessary, first, for us to determine the status of the additional compensation in question. Was it voted as and for salaries for 1920, although measured by services rendered prior to that year, or, was it voted and accrued in 1920 as and for salaries for services performed in prior years? If the additional compensation comes within the latter classification, then, in our opinion, it may not be deducted in the year 1920. *Vaughan & Barnes, Inc.*, v. *Commissioner*, 6 B. T. A. 1279.

The resolution of May 6, 1920, is ambiguous and might be susceptible to either interpretation. The resolution, in part, says:

This meeting having been called for the purpose of considering and acting upon the proposal for a grant of additional compensation to Mr. J. K. Robinson, Jr., and Mr. Alfred McEwen, for their past services to the Company * * *.

At the hearing, the history of the petitioner was opened up and evidence was introduced with respect to the action taken by the board of directors and of their intention in connection therewith. We have held in the *Appeal of Union Dry Goods Co.*, 1 B. T. A. 833, that the minute as written is not conclusive as to the year for which additional compensation was authorized. From all of the evidence adduced, we are of the opinion that the additional compensation voted and accrued in May, 1920, was intended to be as and for, and was as and for, salaries for the year 1920. The motivating or impelling influence, however, in determining the amount to be paid as additional compensation for the year 1920 was the service rendered by the officers in question prior to that year. In other words, the additional compensation for 1920 was based upon efficiency and ability of the officers as demonstrated by past performances and results achieved over the preceding period of years.

Section 234(a) (1), which provides for the deduction of salaries reads, in part, as follows:

(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered  *  *  *.

It follows, therefore, that if the regular annual salaries of the petitioner's president and treasurer plus the additional salaries of $48,000 constituted reasonable compensation for services actually rendered by those officers in 1920, the deduction on account thereof is properly allowable. The petitioner urges that the total compensation for 1920 was reasonable in amount for services actually rendered in that year by the officers in question and the respondent insists that it was unreasonable.

In support of its contention that such amount was reasonable compensation for 1920, the petitioner takes the position that the action of the board of directors of a corporation in authorizing salaries for a given year raises a presumption that the amount voted is reasonable and complies with the statute until the contrary be proven. In other words, the petitioner insists that the burden of proof is on the respondent to show that the salaries for 1920 were unreasonable. We are unable to agree with the petitioner in this respect.

Our attention is called to the case of *United States* v. *Philadelphia Knitting Mills Co.*, 273 Fed. 657, as supporting the petitioner's position that the compensation in dispute is presumed to be reasonable until the presumption is overcome. In that case the court was construing the Corporation Excise Tax Act of 1909, which provided for a tax at a named rate upon the net income of a corporation, to be ascertained by deducting from its gross income " all ordinary and necessary expenses." The statute did not specifically make salary an allowable deduction, though it was so construed by the Bureau of . Internal Revenue when the salary is a "reasonable and fair compensation for services rendered regardless of the amount of stock such officer may hold." The court in holding that, under the statute, the Government may not determine whether salary paid corporation officers is a reasonable and fair compensation, but may determine whether it is salary that is paid, or whether it constitutes profits diverted to a stockholding officer under the guise of salary, stated:

Confining our inquiry to the statute, it appears that the basis on which a salary may be allowed as a valid deduction is that it was in fact an " ordinary and necessary expense (of the corporation) actually paid  *  *  *  in the maintenance and operation of its business." To be a necessary expense it must have been paid for services actually rendered. *Jacobs & Davies, Inc.*, Anderson 288 Fed. 505, 506, 143 C. C. A. 87. Whether services were rendered and whether also they were commensurate with the salary paid are matters of judgment

and discretion reposed by general law in the board of directors of the corporation. As the board of directors is charged with the duty and clothed with the discretion of fixing salaries of the corporation's officers, the Government has no right (until expressly granted by statute) to inquire into and determine whether the amounts thereof are proper, that is whether they are too much or too little. But, while the amount of salary fixed by a board of directors is presumptively valid, it is not conclusively so, because the Government may inquire whether the amount paid is salary or something else. Admittedly the Government has a right to collect taxes on net income of a corporation based on profits after all ordinary and necessary expenses, including salaries, are paid. It has a right, therefore, to attack the action of a board of directors and show by evidence, not that a given salary is too much, but that, in the circumstances, the whole or some ı rt of it it not salary at all but is profits diverted to a stockholding officer under the guise of salary and as such is subject to taxation * * *. The question of fact here was whether the money paid was all salary or part profits. *The presumption arising from the action of the board of directors was that it was all salary.* In order to overcome the presumption the burden was on the Government to produce evidence, not necessarily conclusive, but sufficient to raise a valid inference that some definite part of the compensation was not salary but profits. (Italics ours.)

It is apparent from the foregoing statement that the court was not considering the reasonableness of the compensation sought to be deducted. The only question before it was whether the amount sought to be deducted was in fact salary, and with respect to the amount fixed as salaries the court stated that there was a presumption that it was in fact all salary. That is simply another way of saying that the acts of the board of directors of a corporation are presumed to be regular and valid.

The Revenue Act of 1918 differs from the Corporation Excise Tax Act of 1909 with respect to the deduction of salaries, in that section 234 (a) (1), *supra*, specifically provides for a deduction for " a reasonable allowance for salaries or other compensation for personal services actually rendered." Pursuant to this provision, as stated in the case of *William S. Gray & Co.* v. *United States*, decided by the Court of Claims, June 6, 1927, " it is undoubtedly the right, as well as the duty, of the Commissioner of Internal Revenue under the provisions of the 1918 Revenue Act to determine the reasonableness of the salaries of which a deduction is asked by the taxpayer, as well as to decide whether or not the salaries are ordinary and necessary expenses in the maintenance and operation of the business."

In the *Appeal of Gustafson Manufacturing Co.*, 1 B. T. A. 508, we stated:

Counsel for taxpayer contends that the directors of the corporation are the sole judges as to what constitutes reasonable compensation and that since they determined upon $20,000 as a salary to be paid the president and general manager for 1918 the Commissioner has no authority to reduce the amount notwithstanding the fact that the salary was based upon earnings or was a

ɪstribution of profits of the corporation in the form of compensation. This contention, of course, cannot be sustained.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

Under the provision of this section (234(a)(1) *supra*) the Commissioner not only has the authority but it is his duty to determine under all of the facts obtainable the reasonableness or unreasonableness of deductions by a corporate taxpayer of compensation paid. The Commissioner, upon the evidence before him, determined that a deduction of $16,000 for compensation for the services rendered taxpayer by its president and general manager during the year 1918 was reasonable. The evidence before us does not justify a deduction for compensation of an amount in excess of that determined by the Commissioner.

In *W. K. Henderson Iron Works & Supply Co.* v. *Commissioner*, 6 B. T. A. 92, we stated in part:

> It may be that such additional salaries paid in 1919, when added to the regular salaries paid in 1919, constitute a reasonable compensation for personal services actually rendered in that year, but we have no evidence before us concerning the salaries paid, service performed, or the volume or character of business done during the year 1919, and we are, accordingly, without the necessary facts to determine the issue for that year.

We conclude, therefore, that the action taken by the board of directors in voting the total compensation to the officers in question for 1920, does not raise a presumption that the amount voted was in fact reasonable for services actually rendered, thereby complying with the terms of the statute. The Commissioner having determined that the additional compensation voted in May, 1920, was unreasonable for services actually rendered in that year, it becomes necessary for the petitioner, if the deduction is to be allowed, to show that he erred in his determination. We, therefore, must be guided in our determination as to the reasonableness of the compensation in dispute by the evidence adduced in this proceeding.

It will be noted from the table set out in the findings of fact that the petitioner was prosperous in years prior to 1920. It will also be noted that the compensation for 1920 to the officers in question was more than two times the amount received in any other year. There is nothing in the record to indicate that additional salaries might be expected or would be granted in the future, and there is nothing to indicate that the duties performed were materially different from those performed in preceding or succeeding years. It is not intimated that the compensation received prior to and subsequent to 1920 was inadequate. Under these circumstances, we are of the opinion that the salaries paid by the petitioner to its officers in years prior to and subsequent to 1920 are the best evidence of their reasonableness and their value to the petitioner in that year. The deliberate, *bona fide* action of the board of directors over a period of years is persuasive in such matters.

It may be conceded that the officers in question were efficient, and brought prosperity to the petitioner and that the additional compensation was a merited recognition on the part of the board of directors of the valuable services rendered prior to 1920, but all of the evidence tends to the conclusion that the extra compensation for 1920 was in excess of reasonable compensation for services performed in that year.

We approve, therefore, the respondent's determination in disallowing as a deduction for the year 1920 the additional salaries in the amount of $48,000.

*Judgment will be entered for the respondent.*

Considered by SMITH and LITTLETON.