SOBRINOS DE IZQUIERDO, INC., Plaintiff and Appellant, *v.* R. SANCHO BONET, TREASURER OF PUERTO RICO, Defendant and Appellee.

No. 7891. Argued January 25, 1940.—Decided February 23, 1940.

*R. Díaz Collazo* for appellant. *George A. Malcolm, Attorney General,* and *R. García Cintrón, Assistant Attorney General,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the court.

This is an action for the refund of taxes paid under protest. The plaintiff is a corporation incorporated under the laws of this Island and engaged in the sale of goods, whose president and general manager is Dionisio Trigo who is, moreover, the owner of 920 stock certificates out of 1,000 shares of stock of $100 each. Of the remaining shares 75 belong to his wife and the other 5 to Ferrán, auditor of the corporation.

It was alleged in its complaint that the defendant demanded of the corporation the payment of its income tax and that on June 30, 1937, it paid under protest the following sums: $777.85; $1,146.76; $1,484.06; $476.44, and $1,463.01, respectively, for the taxable years 1930, 1931, 1932, 1933 and 1934, and recited the action taken by the Treasurer and the proceedings had before the Board of Review and Equalization which led to the above demand for payment and payment under protest.

The facts and the grounds relied upon for claiming the refund of the sums paid are stated as follows:

"(9) That the defendant, at the time of the payment under protest of the amounts mentioned in paragraph 4 of this complaint, was and still is estopped from collecting the said income tax, the conduct of the defendant being unfair, arbitrary and contrary to law for the following reasons:

"(a) that Dionisio Trigo, president and general manager of the plaintiff corporation, filed, conformable to law, individual income tax returns for the years 1930, 1931, 1932, 1933 and 1934, and included in each of the aforesaid returns the total amount of the salaries paid to him by Sobrinos de Izquierdo, Inc.; that the said

individual income tax returns had been liquidated after being accepted as correct and the amounts thereof collected by the Treasurer of Puerto Rico in accordance with the returns filed. . . . .

"(b) that the defendant, arbitrarily, without any justification either in fact or in law, and, on the contrary, disregarding the law and in open conflict with the construction given to said law and openly in conflict, likewise, with the decisions of the Board of Review and Equalization itself (In re San Juan Mercantile Corp.; In re Jorge Silva, Inc.; In re Central Machete, Inc.) declared that the compensation paid by the plaintiff to its president and general manager for his services as such was excessive.

"(c) that defendant likewise, capriciously, unfairly, arbitrarily and unlawfully, failed to deduct from the income of the plaintiff the disbursement on account of such additional compensation, . . . . .

"(d) that defendant, likewise, capriciously, . . . . . failed to allow the plaintiff the sums reimbursed to its president and general manager for traveling and representation expenses, . . . . .

The defendant answered to the above facts and grounds as follows:

"Concerning the first paragraph of the ninth averment of the complaint, the defendant denies that either at the time when the plaintiff corporation paid under protest the income tax mentioned in connection with the 4th allegation of said complaint, or at any time, was, or is at present, estopped from collecting the said income taxes, either on the grounds stated in said allegation or on any other ground; he further denies that his conduct in collecting such taxes was unfair, arbitrary, or in any manner contrary to law.

(a) Of the averments made in subdivision (a) of said 9th allegation of the complaint the defendant admits that Dionisio Trigo, as president and general manager of the plaintiff corporation, when filing his personal income tax returns for the years 1930, 1931, 1932, 1933 and 1934, included in the respective returns the total amounts received by him as salaries; the defendant admits that when liquidating the individual returns of Trigo he accepted the same as correct as to the amount stated therein as salaries and as compensation paid to plaintiff Trigo for services rendered; and he further admits that the total compensation arising from the share in the profits assigned to Trigo was not recognized to the plaintiff corporation nor was the same deducted from the total amount which gave rise to his

income tax; but the defendant denies that his conduct in this respect was unfair or in any way contrary to law.

"(b) As to subdivision (b) of the same 9th allegation of the complaint, defendant denies that he, capriciously, . . . . had considered as excessive the compensation paid by the plaintiff to Trigo for services rendered by the latter to the former as its president and general manager; and he, on the contrary, alleges that the amounts so admitted or fixed by the defendant as compensation for the services rendered by Trigo to the plaintiff corporation are just and reasonable.

"(c) As to subdivision (c) of the 9th allegation of the complaint, the defendant denies that he acted capriciously, . . . in failing to deduct from the income tax of the plaintiff the disbursement made by the latter as additional compensation to its president and general manager, in the sums specified in said subdivision (c).

"(d) As to subdivision (d) of the 9th allegation of the complaint, the defendant denies that he acted capriciously, unfairly, arbitrarily or unlawfully, in failing to accept as deductions from the income tax of the plaintiff the sums paid by it to its president and general manager for traveling and representation expenses, in the amounts specified in said subdivision (d)."

After a hearing the district court gave judgment for the defendant, with costs but without attorney's fees.

The plaintiff appealed. It assigns in its brief three errors as having been committed by the court: in failing to hold that the amounts assigned to its president were reasonable compensations for salaries and services; in failing to hold that the total of the sums refunded to said president as traveling expenses was an ordinary disbursement or expense to be paid; and in weighing the evidence as a whole.

The trial court in its opinion made a careful recital of the facts and stated the grounds for its judgment. We are going to transcribe from it as follows:

"The plaintiff filed its income tax returns for 1930, 1931, 1932, 1933 and 1934, and paid the tax on the net income as revealed by the returns. Subsequently, as the Treasurer disagreed regarding deductions made by the plaintiff on account of salaries or additional compensation to Trigo for personal services rendered by him, he

notified the latter on November 13, 1935 as to a deficiency for each of the above taxable year. The plaintiff felt aggrieved by the decision of the Treasurer and appealed to the Board of Review and Equalization which in due time rendered its decision modifying that previously rendered by the Treasurer.

"During each of the above taxable years, except in 1932, Trigo made a trip lasting from four to six months to Europe, and some times to the United States, occasionally accompanied by his wife and children and at times alone. Taking advantage of his stay abroad he used to work, when necessary, upon producers, manufacturers and business firms whose products or business the corporation sells or represents in Puerto Rico, sometimes securing new agencies or obtaining lower prices or freights. On his return to Puerto Rico he would report upon the work done by him and at the end of each taxable year would be credited the sums which, disbursed for traveling expenses and as additional compensation for personal services rendered by him, we will set forth further on.

"For the year 1930, from April 1 to December 31, the corporation returned the following income and deductions:

| | |
|---|---|
| "Gross income | $393, 963. 80 |
| "General deductions | 381, 614. 32 |
| "Net income | 12, 349. 48 |

"Among the general deductions for 1930 there appears the sum of $16,634.75 paid to Trigo as follows:

| | |
|---|---|
| "Traveling expenses | 2, 500. 00 |
| "Regular salary at $400 monthly during 9 months | 3, 600. 00 |
| "Additional compensation for services rendered | 10, 534. 75 |
| Total | $16, 634. 75 |

"For 1931 it returned the following income and deductions:

| | |
|---|---|
| "Gross income | $487. 446. 36 |
| "General deductions | 472, 225. 58 |
| "Net income | 15, 220. 78 |

"Among the general deductions for 1931 there appears the sum of $22,629.36 paid to Trigo as follows:

| | |
|---|---|
| "Traveling expenses | $3, 726. 75 |
| "Regular salary at the rate of $500 | 6, 000. 00 |
| "Additional compensation for services rendered | 12, 903. 61 |
| Total | $22, 629. 36 |

"For 1932 the following income and deductions were returned:

"Gross income _____ $530, 700. 67
"General deductions _____ 512, 133. 98
"Net income _____ 18, 566. 69

"Although in 1932 Trigo did not leave Puerto Rico and notwithstanding the fact that his salary was $500 monthly as in 1931, there was deducted from the gross income the sum of $22,388.14 paid to Trigo as follows:

"Regular salary at $500 monthly_____ $6, 000. 00
"Additional compensation for services rendered_ 16, 388. 14
_____
Total_____ $22, 388. 14

"In 1933 the following income and deductions were returned:

"Gross income _____ $575, 123. 48
"General deductions _____ 560, 079. 72
"Net income _____ 15, 043. 76

"Among the general deductions for 1933 there appears the sum of $18,715.80 paid to Trigo as follows:

"Traveling expenses _____ $3, 600. 00
"Regular salary at $500 monthly_____ 6, 000. 00
"Additional compensation for services rendered 9, 115. 80
_____
Total_____ $18, 715. 80

"For 1934 the corporation returned the following income and deductions:

"Net income _____ $632, 321. 53
"General deductions _____ 616, 690. 57
"Net income _____ 15, 630. 96

"From the gross income there was deducted in 1934 the sum of $20,849 paid to Trigo as follows:

"Traveling expenses _____ $3, 850. 00
"Regular salary at $500 monthly_____ 6, 000. 00
"Additional compensation for services rendered 10, 999. 00
_____
Total_____ $20, 849. 00

"The Board of Review and Equalization in considering the appeal taken by the plaintiff decided, as regards the taxable year 1930, to accept the following deductions:

| | |
|---|---:|
| "Traveling expenses | $2,500.00 |
| "Increased regular salary from $3,600 to | 7,500.00 |
| "Reduced additional compensation to | 2,152.42 |
| Total | $12,152.42 |

"As regards 1931, the Board accepted the following deductions:

| | |
|---|---:|
| "Reduced the traveling expenses from $3,726.72 to | $3,000.00 |
| "Increased regular salary from $6,000 to | 10,000.00 |
| "Reduced the additional compensation from $12,903.61 to | 2,799.11 |
| Total | $15,799.11 |

"As regards 1932, the Board accepted the following deductions:

| | |
|---|---:|
| "Increased the president's salary from $6,000 to | $10,000.00 |
| "Reduced the additional compensation from $16,384.14 to | 3,335.48 |
| Total | $13,335.48 |

"As regards 1933, the Board decided:

| | |
|---|---:|
| "To reduce the president's traveling expenses from $3,600 to | 3,000.00 |
| "To increase the president's salary from $6,000 to | 10,000.00 |
| "To reduce the additional compensation from $9,115.80 to | 2,358.95 |
| Total | $15,358.95 |

"As regards 1934 the Board decided:

| | |
|---|---:|
| "To reduce the president's traveling expenses from $3,850 to | $3,000.00 |
| "To increase the president's salary from $6,000 to | 10,000.00 |
| "To reduce the additional compensation from $10,999 to | 2,358.95 |
| Total | $15,358.95 |

"Really, we fail to see why the Board should have increased the salary assigned by the corporation to the president; but as this is beneficial to the plaintiff and it is the latter who objects to the decision of the Board, we will not consider the question.

"1.—It is alleged by the plaintiff that as Trigo declared on his personal income tax returns for the years involved in the litigation the amounts which the plaintiff testified to have paid him and that as the Treasurer collected the corresponding personal tax, he is now estopped from rejecting such sums as deductions from the gross income of the plaintiff corporation.

"2.—That the sums paid by the plaintiff to its president according to the above items constitute a reasonable compensation for personal services actually rendered.

"The fact that Trigo declared on his personal tax returns the same amounts that the plaintiff testified to have paid him, and the fact that the defendant had received from Trigo the tax levied on such amounts, shall not prevent the Treasurer from rejecting. in whole or in part the said sums as being deductible from the gross income of the plaintiff. Such facts only show that the plaintiff actually paid the sums in question, *Austin* v. *United States,* 28 F. (2d) 677, as to which we do not entertain any doubt whatever, especially if we bear in mind that in view of the status of Trigo in the plaintiff corporation it might well be said, paraphrasing Louis XIV, 'I am the corporation.'

"But this is not the issue to be settled, for although *infra vires* contracts entered into by a board of directors are presumptively valid yet as regards salaries the fixing thereof is not conclusive as against the government, because the latter has the right by the terms of the statute to ascertain and determine whether the amount paid as salary is actually salary or whether, on the contrary, under the cloak of salary profits are distributed. *H. L. Trimyer & Co.* v. *Noel,* 28 F. (2d) 781. The government can not, in fixing the tax upon the income of a corporation under a statute like ours which permits deduction of necessary expenses actually paid, inquire into and determine whether payments of salaries to officers of the corporation are proportionate to the services performed by them, but may attack the payment on the theory that it is not payment of salary, but distribution of profits. *United States* v. *Philadelphia Knitting Mills,* 15 A.L.R. 1313.

"Upon the above premises, and without losing sight of the fact that the burden of proof rests upon the plaintiff corporation to show

that the amounts alleged to have been paid as salaries were part of the ordinary and necessary expenses for the maintenance and operation of the business,—*Botany Worsted Mills* v. *United States,* 73 L. ed. 282,—we will proceed to determine whether the plaintiff's evidence shows that the sums paid to Trigo and rejected by the Board of Review and Equalization were not distributed profits but salaries paid for necessary services actually rendered by Trigo.

''As already stated by us and as appears from the testimony of Trigo himself, it is customary with the plaintiff at the end of each year, to apply 60% of the net profits to pay additional compensation to officers and employees. So that necessarily 60% of the profits shall have to be distributed among the officers, although, of course, under the heading or title of 'additional compensation.' How can the corporation know beforehand and year after year that its officers, to whom a reasonable salary is assigned, necessarily and without fail, shall have rendered services requiring additional compensation and that the amount of such compensation will necessarily equal 60% of such an uncertain and variable amount as the annual profits of a corporation engaged in business? This single fact reasonably shows that the so called additional compensation is nothing else but a distribution of profits under the cloak of something that does not fit in. The ratio between the salary fixed and the so called additional compensation is so out of proportion that it strikes the most candid. Thus we see that during nine months in 1930 the regular salary of Trigo amounted to $3,600. Yet, for the three months left he was paid not less than $10,534.75 as additional compensation, a sum three times as large as his salary during nine months of work. The following year, 1931, they go still farther, and although his salary is increased to $6,000 annually, an additional compensation is again assigned to him amounting to $12,903.61. But where the distribution of profits most prominently appears is in 1932, in which year, although Trigo did not leave Puerto Rico and, therefore, did not have an opportunity to render his extraordinary services abroad, yet we are faced with the paradoxical situation of an additional compensation amounting to the respectable sum of $16,388.14.

''Moreover, the logical and usual thing is that in giving a bonus to an officer or employee a lump sum should be assigned and not one ending in dollars and cents, because extraordinary services are never computed so minutely. However, if we examine the additional compensations paid to Trigo we find that in 1930 the additional

compensation amounted to $10,534.75; in 1931, to $12,902.61; in 1932, to $16,388.14; in 1933, to $9,115.80; and in 1934, to $10,999.00. This fact is evident proof that for the distribution of the additional compensation no account has been taken of the reasonable value of the services rendered but of a variable factor, which is the ratio between the capital of the beneficiary in the corporation and the gross profits, or what amounts to the same, a distribution of dividends or profits has taken place.

"We are not convinced by the plaintiff's evidence that the conclusion reached by the Board of Review and Equalization is not sustained by the evidence, both as regards the additional compensation and the traveling expenses. On the contrary, as already pointed out, the Board was rather generous with the plaintiff in unduly increasing the regular salary fixed by the corporation to its president. Therefore, we must not disturb the conclusion reached by the Board of Review and Equalization. *General Water Heater Corp.* v. *Commissioner*, 42 F. (2d) 419; *Sunset Scavenger* v. *Commissioner of Internal Rev.*, 84 F. (2d) 453, 456."

We have carefully considered the pleadings, the evidence and the briefs and to our judgment the statement of facts and the opinion just transcribed are fully supported by the former and victoriously resist the arguments of the appellant in his brief which are, moreover, all of them refuted in the appellee's brief.

One of the so-called family corporations is involved herein, perfectly legal and which are commendable, but whose special character must necessarily influence any judgment formed regarding its acts.

If a family, in order to better manage its capital, decides to establish a corporation enabling it to create a separate entity with limited liability, it must do so with all its consequences. There is a close relation between right and duty. A corporation, as an independent entity, has rights and duties, one of the latter being the payment of income tax which is fixed at a higher rate than that usually fixed for natural persons, and if a family were allowed to act without

restriction or scrutiny regarding the distribution of profits it would amount to giving it a free hand for complying or not complying with the provisions of taxation laws.

In 3 Paul and Mertens' Law of Federal Income Taxation, p. 100, it is said as follows:

"Because close or family corporations are generally free from the restrictions which are common to corporations with larger bodies of shareholders they frequently lend themselves to profit sharing in the guise of salary payments. Furthermore, in the case of corporations which are closely controlled by a more or less homogeneous group the possibility that the salaries will not be based on the value of the services rendered is much greater. So we find that in the case of close corporations, or even in cases in which employers and employees are related, payments made are scrutinized with particular care to ascertain whether they are reasonable or whether they are in fact salaries or profit-sharing arrangements. Reasonable compensation in the case of a closely held corporation is such as the taxpayer would expect to give to a stranger qualified for similar services; where a family business is owned principally by three directors, these directors, who may have caused the earnings by their skill and ability, may not deduct what remains after provision for liberal dividends and ample reserves even though there is no outside stockholder to object. The conclusion is not to be inferred that salaries are *ipso facto* unreasonable because paid by a close or family corporation. The inference is rather that in these cases the taxpayer may be confronted with the problem of offering stronger proof of reasonableness than in other situations."

The following is also from p. 82 of vol. 3 of the same treatise:

"Not infrequently corporations, or for that matter individual employers, may, in addition to the regular salary, pay additional compensation in the form of a bonus. Because such bonuses are frequently, though not always, based on a percentage of profits, they may not be profit-sharing payments. Of course, payments to stockholders which are contingent upon earnings invite careful scrutiny. The fact that the amount is allied to the profits tends to show it is a distribution of profits. The mere fact the payment takes

the form of a bonus is not in itself conclusive; when made in good faith as additional compensation for services rendered, bonuses are deductible. The total payment, i. e., salary and bonus, must be reasonable. That bonuses are not inordinately large, and that they result in the stimulation of employees, are factors to be considered in determining their true nature.

"The rule is different with respect to Christmas bonuses; they likewise are deductible if they are intended to be additional compensation."

The action of the Board of Review and Equalization endorsed by the district court after a full hearing makes the impression not of something arbitrary, but of something really reasonable in the sound exercise of the power granted on it by law. The business of the corporation was brilliantly successful and liberal was the remuneration to its president and manager in salaries and additional compensations such as the same were finally fixed by the board. The separate entity, with independent life, the corporation, ought to profit also in order to consolidate its credit and to have something with which to answer directly, should the occasion arise, to those who dealt and contracted with it, and in order to contribute, in just proportion with its reasonable share, to the expenses of the community whose laws allowed its creation and insured its orderly and efficient operation. If there are profits, let them be distributed among the shareholders after the payment by the corporation of its taxes. However, it is neither fair nor should it be permitted that in order exclusively to evade the payment of a higher rate of taxation, such profits should be distributed as if they had been applied to the payment of necessary expenses, of salaries and compensation for services actually rendered.

The appeal must be dismissed and the judgment appealed from shall be affirmed.

Mr. Justice Wolf took no part in the decision of this case.